**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AN ORDER AUTHORIZING                  Misc. Case. No. 14-286 (JMF)
DISCLOSURE OF HISTORICAL CELL SITE
INFORMATION FOR TELEPHONE NUMBER
[REDACTED]

### MEMORANDUM OPINION AND ORDER

Pending before the Court is a Renewed Application pursuant to 18 U.S.C. § 2703(d) that

seeks historic cell site location information ("CSLI"). See Renewed Application for Disclosure

of Historical Cell Site Information Pursuant to Title 18 U.S.C. Section 2703(d) [#2] (under seal).

After careful consideration and a review of the relevant case law, this Court is convinced that the

request for CSLI raises serious statutory and constitutional questions. As a result, this Court can

only determine whether this application should be granted in its current form—and without a

showing of probable cause—if it takes evidence on the underlying technology and receives

briefing from both the government and court-appointed amicus curiae. For the reasons stated

below, the Court has requested that the Electronic Frontier Foundation ("EFF") serve as amicus

curiae and that it and the government provide the Court with evidence and substantive briefing

on this matter.

### I.      Background

This Court rejected the government's original application for the reasons stated in In the

Matter of the Application of the United States of America for an Order Authorizing Disclosure

of Historical Cell Site Information for Telephone Number [Redacted], 1:13-MC-199, 1:13-MC-

1005, 1:13-MC-1006, 2013 WL 7856601, at *5-6 (D.D.C. Oct. 31, 2013) (Facciola, M.J.). See

Order [#3].[1] The Renewed Application seeks CSLI for a period of twenty-five days,[2] and the

underlying investigation involves an investigation of one specific robbery that occurred at a

specific—and known—date and time. See [#2]. It is directed to AT&T. Id.

The government's proposed order requests, with respect to CSLI, that AT&T disclose

"[c]ell site activation, including side and/or sector information for incoming, outgoing, and

'direct connect,' calls." [#2] at 9. It also asks for "[a] listing of all control channels and their

corresponding cell-sites and sides if available" and "[a]n engineering map, showing all cell-site

tower locations, sectors, and orientations." Id. at 10.

In the Court's view, these are all of the necessary facts that inform the relevant statutory

and constitutional issues described below. Thus, the Renewed Application will remain under seal

during the pendency of this matter to protect the integrity of the underlying investigation.

## II.     The Legal Issues Require That the Court Take Evidence

This Court has reviewed approximately eighty-seven opinions that are publicly available

on Westlaw and that substantively address the legal issues surrounding CSLI. As commentators

have pointed out, these decisions are impossible to reconcile. See, e.g., Stephanie Pell and

Christopher Soghoian, Can You See Me Now?: Toward Reasonable Standards for Law

Enforcement Access to Location Data That Congress Could Enact, 27 Berkeley Tech. L.J. 117,

142 (2012). There are two main arguments raised in these opinions that suggest that a § 2703(d)

order cannot compel the production of CSLI and that a search and seizure warrant is instead

required. Each raises serious factual questions about how the underlying technology actually

functions.

---

[1] The Court has published a public, redacted copy of its Order denying the original application as [#3].
[2] The government originally sought twenty-two days of CSLI. See [#2] at 1, n.1. In the Renewed Application, it says, at various places, that the government wants twenty-four days and twenty-three days of CSLI. Id. By the Court's count, the actual number is twenty-five days because the government wants the CSLI "up through and including" the last day. Id. at 1.

First, there is a statutory argument that the tracking device exception in 18 U.S.C.

§ 2510(12), which incorporates the definition of a tracking device from 18 U.S.C. § 3117(b),

means that CSLI is not a "record" held by an electronic communication service and thus outside

the scope of a § 2703(d) order. This is the holding by, among others, Judge Colleen McMahon[3]

and Magistrate Judge Lisa Lenihan[4] (and her colleagues) that is rejected by, among others, Judge

Lewis Kaplan[5] and the Third Circuit, which reversed Judge Lenihan.[6] In the Third Circuit's

view, CSLI is "derived from a 'wire communication' and does not itself comprise a separate

'electronic communication,'" thus making the § 3117(b) tracking device exception inapplicable.

Third Circuit Opinion, 620 F.3d at 310. Then-Chief Judge Royce Lamberth reached a similar

conclusion,[7] although he noted that "this logic would not apply to text messages, which do not

involve any 'aural transfer.'" Judge Lamberth Opinion, slip op. at 8, n.4.

This split raises fundamental factual questions, such as whether—with current cellular

telephone technology—the signal that creates CSLI is itself a separate electronic communication

from a cell phone or whether it is part of the same signal that carries the voice call. If it is, in

fact, a separate signal, then the assumption that a single signal both creates CSLI and carries the

voice communication must be questioned. Similarly, as Judge Lamberth pointed out, if the CSLI

that is given the government includes any CSLI *other than* that which is generated as part of an

---

[3] See In re Application of the United States of America for an Order Authorizing the Use of a Pen Register with Caller Identification Device Cell Site Location Authority on a Cellular Telephone, 2009 WL 159187, at *2-3 (S.D.N.Y. Jan. 13, 2009).

[4] See In re Application of the United States of America for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government, 534 F. Supp. 2d 585, 601-07 (W.D.Pa. 2008), *vacated* 620 F.3d 304 (3d Cir. 2010).

[5] See In re Application of the United States for Prospective Cell Site Location Information on a Certain Cellular Telephone, 460 F. Supp. 2d 448, 460 (S.D.N.Y. 2006).

[6] In re Application of the United States of America for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government, 620 F.3d, 304 at 310 (3d Cir. 2010) (hereinafter Third Circuit Opinion).

[7] See In the Matter of the Application of the United States for an Order Authorizing Disclosure of Historical Cell Site Information for Telephone Number [REDACTED], Misc. Case No. 11-449 (D.D.C. Oct. 3, 2011) (hereinafter Judge Lamberth Opinion) *available at* http://www.dcd.uscourts.gov/dcd/sites/dcd/files/100311redactedopinion.pdf.

actual phone call—even if that is all the government requests to have disclosed—then that other

CSLI may fall outside the scope of the statute (such as CSLI generated through sending and

receiving text messages, using applications like Facebook and Twitter, checking e-mails, or

using the GPS function on the phone). Thus, it is impossible for this Court to make any

determinations about whether there is statutory authority for CSLI without taking evidence and

making findings of fact about how the CSLI is generated and what is actually disclosed to the

government.

Second, the Fourth Amendment and the Supreme Court's rulings in United States v.

Miller, 425 U.S. 435 (1976), Smith v. Maryland, 442 U.S. 735 (1979), United States v. Karo,

468 U.S. 705 (1984), and the shadow majority opinion in United States v. Jones, 132 S.Ct. 945

(2012), all raise serious questions about whether the Fourth Amendment requires a warrant to

obtain CSLI. Suffice it to say that courts are divided about whether the Fourth Amendment

prohibits disclosure of CSLI absent a warrant and a showing of probable cause.[8] Part of this

divide comes from a fundamental disagreement between judges about what constitutes a

reasonable expectation of privacy and to what extent CSLI is "voluntarily" provided to a third

party, which bears on whether the third-party doctrine is applicable.[9] More significantly, for

present purposes, there is also a fundamental disagreement about how precise CSLI actually is.

The Third Circuit opinion perfectly highlights the problem. There, the government argued that

the CSLI it sought "does not provide information about the location of the caller closer than

several hundred feet," but the court noted that GPS data could always be requested and that,

"under certain circumstances, [CSLI may] be used to approximate the past location of a person."

---

[8] Compare, e.g., In re Application of the United States of America for Historical Cell Site Data, 724 F.3d 600 (5th Cir. 2013) (hereinafter Fifth Circuit Opinion) with In re Application of the United States of America for an Order Authorizing the Release of Historical Cell-Site Information, 809 F. Supp. 2d 113 (E.D.N.Y. 2011).
[9] Compare, e.g., Fifth Circuit Opinion, 724 F.3d at 613 with Third Circuit Opinion, 620 F.3d at 317.

Third Circuit Opinion, 620 F.3d. at 312. Thus, it is evident that the Third Circuit was hypothesizing about different scenarios where the level of detail of the CSLI that would be given to the government may vary. It is for that reason that the court ultimately ruled that there *are* possible scenarios where a warrant would be required, if the CSLI provided sufficiently detailed tracking information about a person's movements.[10] Id. at 318.

These contrasting views about what the Fourth Amendment requires can only be answered with any reasonable certainty by taking evidence about how cell phones work and what subscribers reasonably understand about how their phones are tracked. For example, how frequently is CSLI generated and how closely can it track a person's location? Is it only generated when a phone call is made? If the government asks for only a narrow subset of CSLI, what does the provider *actually* give the government? What do the terms of service say about tracking a person's location? Does any location information appear on a person's bill? These are all of the types of factual questions that require this Court to develop a factual record. Taking the Third Circuit's hint, this Court will do so before making any determinations about whether the Fourth Amendment prohibits the issuance of an order requiring the disclosure of CSLI absent a showing of probable cause.

With all of that in mind, this Court has drafted several additional factual questions that bear on these complex legal issues:

- How precise is CSLI in an urban setting like Washington, D.C.?
- If the phone is in range of multiple towers when it makes a call, does it generate CSLI with each tower in range or only the tower that has the strongest signal?
- Is CSLI generated when the data functions are used? E.g., e-mail, Twitter, Facebook, web surfing, etc.

---

[10] In light of Justice Alito's shadow majority decision in Jones, the Third Circuit's opinion is best viewed as authorizing disclosure of CSLI under a § 2703(d) order if it is for "relatively short-term monitoring of a person's movements on public streets," while a warrant would be required for "longer term GPS monitoring in investigations of most offenses." Jones, 132 S.Ct. at 964. Whether it is GPS tracking or CSLI tracking may be irrelevant if the CSLI is as precise—or close to it—as GPS data.

- What kind of CSLI records are stored by the provider?
- For what length of time is CSLI stored?
- Does the provider have the capability to sort CSLI for any given phone number so that it provides CSLI that is made only for incoming/outgoing phone calls?
- When a phone "updates" with the network—independently of specific use by the user—is CSLI generated?
- How often does the average phone "update" with the network and connect to a cell tower?
- Is the collection of CSLI at all affected by the network that is used? E.g., LTE, WIMAX, 3G, 2G
- Are all phones certified for E-911 Phase II regulations per 47 C.F.R. § 20.18(h)(1)(I), (ii)?
- When a request for CSLI is received, what exactly is given to the government?

## III.    How These Matters Will Proceed

With respect to *how* this matter will actually proceed, this Court believes that the first step is for the government and the EFF to provide the Court with a list of specific topics, issues, or questions that will help it probe into the relevant factual issues. Once the Court has settled on the scope of the factual issues, the government should ask representatives from AT&T to provide sworn, written explanations in response to the Court's inquiries. After these sworn statements are produced, the government and the EFF are free to indicate whether any additional information or explanation is required—and whether any outside experts may be required to help clarify the technical information so that the Court may better understand it. The Court may, at that point, decide to hold evidentiary hearings to help flesh out whatever is in the written reports. Once that is complete, briefing would begin on the legal issues. Presumably, briefing will first occur with respect to the statutory issue; only if the Court determines that there is statutory authority for the CSLI will it request additional briefing on the Fourth Amendment issues.[11]

---

[11] Because case names in this field are largely redundant (e.g., In re Application of the United States for . . .), the Court prefers that the full citation be given once—either in the body text or as a footnote—with subsequent short citations using the name of the court or judge issuing the opinion in the format of "Third Circuit Opinion, 620 F.3d

First, however, this Court wishes for the EFF and the government to confer regarding the logistical challenges this matter poses and, if possible, come to an arrangement about how to proceed. In six days, this Court will have a conference call with the government and the EFF to see where things stand. The Court understands that, because there is an ongoing criminal investigation, time is of the essence. It will endeavor to proceed without delay, and it expects the government and the EFF to also do so.

The government and the EFF need to be able to file all briefing, motions, expert reports, affidavits, etc. on the public docket. The Court will accordingly unseal the public docket in this matter. However, the government's original application and Renewed Application will remain under seal.

## IV.  Conclusion

It is, therefore, hereby **ORDERED** that the government's original application, Renewed Application, and draft order in Misc. Case No. 14-286 are sealed until further order of this Court;

It is further **ORDERED** that the docket in Misc. Case No. 14-286 will be unsealed and made publicly available;

It is further **ORDERED** that the EFF is designated amicus curiae in this matter;

It is further **ORDERED** that the EFF is to confer with the government and both are to be prepared for a conference call with the Court on April 17, 2014.

**SO ORDERED**.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

---

at 317" or "Judge McMahon Opinion, 2009 WL 159187, at *2-3." This convention should not apply for cases that use "normal" captions, like United States v. Jones.